H. W. ROBINSON AIR FREIGHT CORP. *v.* UNITED STATES (No. 5063)[1]

United States Court of Customs and Patent Appeals, July 21, 1961

*Hays, Busby and Rivkin* (*Alan S. Hays* and *David Busby* of counsel), for appellant.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

SMITH, Judge, delivered the opinion of the court:

This appeal is from the decision of the United States Customs Court, First Division, C.D. 2207, overruling the importer's protest and holding the merchandise, consisting of floor covering in the form of tiles, to have been properly classified by the collector under paragraph 1539(b) of the Tariff Act of 1930, rather than under paragraph 1021 thereof, as contended by the importer.

The competing provisions are as follows:

Paragraph 1539(b), as modified by T.D. 54108:

> Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539(b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent:
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> Manufactures wholly or in chief value of any product described in the preceding item 1539(b) or of any other product of which any synthetic resin or resin-like substance is the chief binding agent_____ 21¢ per lb. and 17% ad val.

Paragraph 1021, Tariff Act of 1930:

> Common China, Japan, and India straw matting, and floor coverings made therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for, 40 per centum ad valorem.

Paragraph 1021, as modified by T.D. 54108:

> Floor coverings not specially provided for (except grass or rice straw floor coverings, and not including felt-base floor coverings) _____ 17% ad val.

It appears from facts stipulated by the parties that the merchandise in issue is in the form of tiles 10½ x 10½ inches in size and 1/16 of an

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

inch thick. The tiles are composed in chief value of a synthetic resin, polyvinyl chloride, as the binding agent and contain in addition calcium carbonate, mineral pigment, phthalic esters, phosphate esters, halogenated hydrocarbons and organic salts of lead, barium and cadmium. The tiles, in use, are glued, cemented or otherwise fastened to the floor to provide the wearing surface thereof. They are generally applied from wall to wall.

The instant merchandise is not provided for *eo nomine* under paragraph 1021. It is, however, a floor covering and the paragraph provides, in terms, for all floor coverings not elsewhere provided for or excepted. The issue to be decided, therefore, is whether the provision for "floor coverings not specially provided for" in paragraph 1021 as modified is to be taken literally or whether it is limited by the doctrine of *ejusdem generis* to floor coverings of the same character as those specifically enumerated in the paragraph.

The court below, while stating at some length its reasons for considering the doctrine of *ejusdem generis* inapplicable, felt itself bound to apply it because of the following decisions of this court: *Gimbel Bros., Inc.* v. *United States*, 22 CCPA, 146 T.D. 47111; *United States* v. *J. L. Hudson Co.*, 23 CCPA 313, T.D. 48177; *United States* v. *Inter-Maritime Forwarding Co., Inc.*, 41 CCPA 107, C.A.D. 537; and *United States* v. *Damrak Trading Co., Inc.*, 43 CCPA 77, C.A.D. 611.

The court below was correct in holding that the *Damrak* decision is of such scope as to be controlling on the determination of the issue here presented. However, that decision turned upon the majority's interpretation of paragraph 1022 of the Tariff Act of 1922 in the *Gimbel* case, and of paragraph 1021 of the Tariff Act of 1930 in the *Hudson* and *Maritime* decisions, which required the application of the doctrine of *ejusdem generis* to paragraph 1021 of the Tariff Act of 1930. In the *Damrak* case, the dissenting opinion analyzed the *Gimbel*, *Hudson* and *Maritime* cases and found them not controlling on the issues. Upon our review here, we agree with that analysis.

As properly pointed out in the dissenting opinion in the *Damrak* case, the *Gimbel* and *Maritime* cases did not involve "floor coverings" because "the mats involved were not used as floor coverings within the meaning of the paragraph, and the differences in texture and material between those mats and the goods provided for *eo nomine* in the paragraph were mentioned merely as supporting that conclusion." With respect to the *Hudson* case, the dissent in *Damrak* notes that while the court mentioned the doctrine of *ejusdem generis*, that decision was made before paragraph 1021 was modified by GATT to expressly include felt base floor covering referred to in the Summary of Tariff Information of 1929. We would now add that the court in the *Hudson* case based its decision upon two independent grounds.

The first was that Congress specifically intended the fur mats involved to be classified with furs, as established by the legislative history. The second basis for the decision was that the mats were excluded from paragraph 1021 of the Tariff Act of 1930 by *ejusdem generis*. Since the latter ground could not have been conclusive of the issues involved there, and since it was not necessary to the decision, it is dictum and therefore not controlling.

Thus, the *Damrak* case stands, bereft of its rationale, and contra to strong indicia of Congressional intent as found in the statutory language and the legislative history. To begin with, there is no general provision for floor coverings save that in paragraph 1021 of the Tariff Act of 1930. Although schedule 10 is entitled "Flax, Hemp, Jute, and Manufactures of," we find in paragraph 1020, provision for linoleum, corticine, floor oilcloth and cork carpet, and mats or rugs made from those materials. While such floor coverings may have a woven fiber base, they are not always so made. Paragraph 1023 ends schedule 10 and is an n.s.p.f. provision for all manufactures of vegetable fiber, indicating that when Congress sought to limit a provision to products made of vegetable fiber, it was not at a loss for words to do so.

Schedule 9, "Cotton Manufactures" contains an n.s.p.f. provision for floor coverings, but it is limited to floor coverings "wholly or in chief value of cotton." 19 U.S.C. 1001, par. 921. Similarly, Congress provided for floor coverings n.s.p.f. in 19 U.S.C. 1001, par. 1117(c), but there it limited the provision to such floor coverings as are "wholly or in chief value of wool." Thus, of three parallel provisions in adjacent schedules dealing with floor coverings, only paragraph 1021 is free from limitation as to the material from which the covering is made. Moreover, that paragraph is immediately preceded by provision for a floor covering not limited in its composition to the vegetable fiber with which schedule 10 is primarily concerned. Following paragraph 1021 is the n.s.p.f. provision for schedule 10, where Congress did limit the provision to vegetable fibers.

Thus it is evident that where Congress intended to limit a provision for floor covering to the material from which the covering is made, it did so in express, unequivocal language. Where Congress has not so limited a provision for floor covering, the absence of a limitation cannot be considered mere legislative oversight. Finally, in view of the preceding paragraph dealing with floor coverings made of diverse artificial materials, the modification by GATT to expressly include felt base floor covering, and the absence of other provision in the statute for floor coverings generally, it would be only reasonable to give the language of paragraph 1021 of the Tariff Act

of 1930 its plain meaning, unless there is a basis for different construction in the legislative history.

The Summary of Tariff Information for 1929, prepared for and used by Congress in drafting the language here involved, indicates that the n.s.p.f. provision for floor coverings was not to be limited to those coverings made from vegetable fibers, for it specifically includes felt-base floor covering and rubber tile. The Summary also notes that the judicial decisions as of that date included rubber bath mats and paper rugs under the n.s.p.f. provision. Finally, the Summary notes that the corresponding provision of the 1922 Act (section 1022) also included cotton floor coverings. Congress did alter the scope of the provision to exclude floor coverings of cotton but placed those coverings in a different schedule. We think it is significant that Congress did nothing to indicate that it wished to exclude those other floor coverings not made from vegetable fibers.

No such limitations were added to paragraph 1021, because Congress did not intend to limit the n.s.p.f. provision. That is evidenced by an effort made in the Senate to amend the 1930 Tariff Act to include provision for sponge rubber mats used to prevent rugs from slipping. Senator Smoot argued that such mats were already provided for under paragraph 1021. 72 Cong. Rec. 5921. Although the amendment was agreed to in the Senate, it was rejected by the Conference Committee for the expressed reason that the rubber mats were already included in the n.s.p.f. provision of paragraph 1021. Conf. Rep. No. 1326, 71st Cong., 2d Sess., Amend. 801.

Clearly Congress never intended to limit the n.s.p.f. provision of paragraph 1021 to just those floor coverings made from flax, hemp, jute or the like. Thus the dictum of this court in the *Hudson* case, and the decision in the *Damrak* case applying the doctrine of *ejusdem generis* to paragraph 1021 are plainly in error, which error resulted in substituting judicial interpretation for what appears to have been a contrary Congressional intent in enacting this legislation.

"The public policy of putting an end to litigation and of not reopening questions which have been decided is a sound one, subject only to the qualification that clear error should not be perpetuated." *United States* v. *Mercantil Distribuidora*, et al., 45 CCPA 20, 23–24, C.A.D. 667. A former holding should not be disturbed in the absence of a convincing showing of error. *Ibid.; United States* v. *Charles H. Demarest, Inc.*, 45 CCPA 109, 111, C.A.D. 682; *United States* v. *Dodge & Olcott, Inc.*, 47 CCPA 100, 103, C.A.D. 737; *Manca, Inc.* v. *United States*, 47 CCPA 103, 105, C.A.D. 738. While we are reluctant to depart from precedent, here a convincing showing of clear error has been made and the salutary principle of *stare decisis* we think does not provide a sufficient reason for perpetuating the error.

 Therefore, we expressly overrule the holding and decline to apply the dictum in *United States* v. *Damrak Trading Co., Inc.*, 43 CCPA 77, C.A.D. 611, and *United States* v. *J. L. Hudson Co.*, 23 CCPA 313, T.D. 48177, that the n.s.p.f. provision of paragraph 1021 of the Tariff Act of 1930 is limited by the doctrine of *ejusdem generis* to floor coverings wholly or in chief value of flax, hemp, or jute or a mixture thereof.

We agree with the reasoning of the court below in suggesting that the precedents of this court were erroneous. However, being bound by these precedents, the court reached a decision which is contrary to its reasoning and to the views here expressed. For these reasons we *reverse* the decision of the Customs Court.

WORLEY, C. J., sat but did not participate in decision.